UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PEARL MAGPAYO,<br><br>    Plaintiff,<br><br>    v.<br><br>WALMART INC.,<br><br>    Defendant. | Case No. 24-cv-01350-WHO<br><br>**ORDER GRANTING MOTION TO DISMISS**<br><br>Re: Dkt. No. 30 |

Plaintiff Pearl Magpayo filed this putative class action seeking to challenge the advertising and label disclosures on defendant's Spring Valley Fish Oil Omega-3 dietary supplements ("Products"). First Amended Complaint ("FAC," Dkt. No. 25) ¶¶ 35-36. Magpayo claims that the packaging on defendant Walmart's fish oil supplements convey to reasonable consumers that Omega-3 supplements in general and Omega-3 fish oil supplements in particular prevent heart disease, but that those claims are false or misleading and that supplements may, in fact, be detrimental to heart health. FAC ¶¶ 4-8, 10-17. She purchased a bottle of Spring Valley Omega-3 Fish Oil Soft Gels Dietary Supplement from a Walmart store in Northern California in June 2023. FAC ¶ 31. Walmart argues that the claims are preempted by federal law or otherwise fail and moves to dismiss the FAC.

**BACKGROUND**

Magpayo alleges that the following health representations are prominently displayed on the front label of Walmart's Products:

- "Fish Oil is a source of Omega-3 fatty acids that support heart health"
- "Heart Health"
- A heart symbol

FAC ¶¶ 13; 36.[1]  She contends that these "heart health representations lead reasonable consumers to believe the Products' Omega-3s support heart health (i.e., that the Omega-3s in the Products reduce the risk of heart disease)." *Id*. ¶ 14.  That disease message, according to Magpayo, is reinforced by online advertising that expressly links the Product to reducing the risk of heart disease.  *Id*. ¶¶ 15-16.

These representations are allegedly false and misleading "because the Products' Omega-3s do not support heart health (i.e., the Omega-3s in the Products do not reduce the risk of heart disease)." *Id*. ¶ 17.  Magpayo contends that the "heart health representations also lead reasonable consumers to believe there is—at least some—conclusive research to show that the Products' Omega-3s reduce the risk of heart disease. . . . [but] there is no conclusive research to show that the Products' Omega-3s reduce the risk of heart disease." *Id*. ¶ 18.

Magpayo asserts that the Product's label is making a type of claim that the Food and Drug Administration ("FDA") would consider an implied health claim.  As such, Walmart is required to but does not make a disclaimer on the Product's label that: "'Supportive *but not* conclusive research shows that consumption of EPA and DHA Omega-3 fatty acids *may* reduce the risk of coronary heart disease.' (emphasis added). This is because the FDA has found that health claims related to heart disease on Omega-3 supplements lack significant scientific agreement." *Id*. ¶¶ 20, 69-81.  Magpayo notes that she is not basing any cause of action on Walmart's violation of the FDA regulations but cites to the disclosure the FDA requires for health claims to support her assertion that the health claims Walmart makes are significant and material to consumers.  *See* FAC ¶ 21 ("the fact that the FDA requires such a disclaimer shows that reasonable consumers can

---

[1] The products included are: Spring Valley Omega-3 Fish Oil Soft Gels, Heart Health Dietary Supplement, 1000 mg, 60 Count; Spring Valley Proactive Support Omega-3 Mini from Fish Oil Dietary Supplement, 1000 mg, 120 Count; Spring Valley Omega-3 Fish Oil For Heart and Brain Health, Dietary Supplement Soft gels, 1000 mg, 60 Count; Spring Valley Maximum Care Omega-3 from Fish Oil Eye Brain Bone & Heart Health Dietary Supplement Soft gels, 2000 mg, 120 Count; Spring Valley Fish Oil Omega-3 General & Heart Health Dietary Supplement Soft gels, 500 mg, 60 Count, 120, & 180 count; Spring Valley Proactive Support Omega-3 from Fish Oil Heart General & Brain Health Dietary Supplement Soft gels, 1000 mg, 120 Count; Spring Valley Omega-3 Fish Oil Soft Gels, 1000 mg, 180 Count; Spring Valley Omega-3 Fish Oil Brain & Heart Health Dietary Supplement Soft gels, 2000 mg, 180 count; and Spring Valley Omega-3 Natural Lemon Flavor Dietary Supplement Twin Pack, 1000 mg, 360 count.  FAC ¶ 35.

be misled about the level of scientific support that exists for a health claim."); *see also id*. ¶¶ 88-89.

To support her claim that the labels are false and misleading, Magpayo identified a number of recent studies and sources that purportedly conclude there are no cardiovascular benefits from taking fish oil Omega-3 supplements and very few benefits that might be secured from other types of Omega-3 products. *See* FAC ¶¶ 45-57. She also identified studies and sources concluding there are "potential risks" from taking Omega-3 fish oil supplements, because "some" supplements may contain cholesterol, oxidized fatty acids, saturated fatty acids, or other contaminants that can negate the purported benefits of certain fish oil supplements. *Id*. ¶¶ 58-65.

Magpayo pleads causes of action based on violations of: (1) California's Consumers Legal Remedies Act ("CLRA," Cal. Civ. Code § 1750 *et seq*.); (2) California's False Advertising Law ("FAL," Cal. Bus. & Prof. Code § 17500 *et seq*.); (3) California Unfair Competition Law ("UCL," Cal. Bus. & Prof. Code §17200 *et seq*.); (4) Breach of Express Warranty (Cal. Com. Code § 2313); (5) Breach of the Implied Warranty; and (6) Quasi-Contract/Unjust Enrichment/Restitution. Walmart moves to dismiss all claims.

**LEGAL STANDARD**

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the plaintiff pleads facts that "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). There must be "more than a sheer possibility that a defendant has acted unlawfully." *Id*. While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 570.

In deciding whether the plaintiff has stated a claim upon which relief can be granted, the Court accepts the plaintiff's allegations as true and draws all reasonable inferences in favor of the plaintiff. *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). However,

3

1  the court is not required to accept as true "allegations that are merely conclusory, unwarranted

2  deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049,

3  1055 (9th Cir. 2008). If the court dismisses the complaint, it "should grant leave to amend even if

4  no request to amend the pleading was made, unless it determines that the pleading could not

5  possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir.

6  2000). In making this determination, the court should consider factors such as "the presence or

7  absence of undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies by

8  previous amendments, undue prejudice to the opposing party and futility of the proposed

9  amendment." *Moore v. Kayport Package Express*, 885 F.2d 531, 538 (9th Cir. 1989).

**DISCUSSION**

**I.  PREEMPTION**

While the FAC discusses in depth the FDA's system and treatment of regulated health claims and contends that Walmart is making claims that the FDA would consider implied health claims, Magpayo is not seeking to enforce those FDA regulations. FAC ¶¶ 21, 88. Instead, she cites the FDA regulations and regulatory guidance as evidence showing the plausibility of her claims regarding consumer perception concerning fish oil Omega-3 supplements and as evidence why Walmart's statements, without additional disclosures, would mislead reasonable consumers.

Magpayo's central theory is that Walmart's heart health statements are false and misleading *because* they convey to consumers that the Product has an impact on cardiovascular disease; a claim that the FDA would consider an implied health claim. FAC ¶¶ 1, 14. Walmart, on the other hand, argues that when the statements and the rest of the label are considered in full context, the statements would instead be considered by the FDA to be permissible "structure/function claims" that merely imply the Products can support heart health.

**A.  Structure/Function or Implied Health Claim**

In *Dachauer v. NBTY, Inc.*, 913 F.3d 844 (9th Cir. 2019), the Ninth Circuit explained the difference between regulated health claims and permissible structure/function claims.

> A structure/function claim "describes the role of a nutrient or dietary ingredient intended to affect the structure or function in humans' or 'characterizes the documented mechanism by which a nutrient or

4

> dietary ingredient acts to maintain such structure or function,' but 'may not claim to diagnose, mitigate, treat, cure, or prevent a specific disease or class of diseases." 21 U.S.C. § 343(r)(6) (emphasis added). A disease claim, conversely, "claims to diagnose, mitigate, treat, cure, or prevent disease," either explicitly or implicitly (such as by claiming that a product treats a disease's "characteristic signs or symptoms"). 21 C.F.R. § 101.93(g)(2)(ii). Structure/function claims must meet three requirements: (1) the manufacturer has substantiation that the statement is truthful and not misleading; (2) the statement contains a prominent disclaimer that the Food and Drug Administration ('FDA') has not evaluated the statement and that the product 'is not intended to diagnose, treat, cure, or prevent any disease'; and (3) the statement itself does not 'claim to diagnose, mitigate, treat, cure, or prevent' disease. 21 U.S.C. § 343(r)(6).

*Id*. at 846-47; *see also Ferrari v. Vitamin Shoppe Indus. LLC*, 70 F.4th 64, 67–68 (1st Cir. 2023) ("Congress amended the FDCA through the Dietary Supplement Health and Education Act of 1994 ('DSHEA') to establish a uniform framework to regulate dietary supplements. Pub. L. No. 103-417, 108 Stat. 4325, 4325–26 (1994). Under the FDCA and DSHEA, manufacturers may make so-called "structure/function claims" about dietary supplements.").

The *Dachauer* court considered a vitamin E supplement's claim to "support cardiovascular health." Similar to this case, plaintiff's theory was that the supplement did not prevent cardiovascular disease and, therefore, it was false and misleading under the CLRA and UCL. *Id*. at 846. At summary judgment, plaintiff's expert testified only that the supplement did not prevent cardiovascular disease and failed to address whether the supplement met the FDA's standard for structure/function claims (*i.e*., provide evidence that the statement was false and misleading because it had no "effect on a small aspect of the related structure/function."). *Id*. at 847-49. In that posture, the court concluded that plaintiff was simply rejecting "the discrete categories of claims that the FDCA establishes" and was improperly attempting to "require proof that the supplement treats or prevents cardiovascular disease" contrary to the requirements of the statue. *Id*. at 848 ("Yet Plaintiff seeks to impose a requirement under California law that structure/function claims—at least those related to cardiovascular, circulatory, and heart health—made on a supplement's label require proof that the supplement treats or prevents cardiovascular disease. That requirement 'is not identical to the requirement of section 343(r).' 21 U.S.C.§ 343-1(a)(5).").

5

The Ninth Circuit in *Greenberg v. Target Corp.*, 985 F.3d 650 (9th Cir. 2021) likewise foreclosed a plaintiff from challenging a structure/function claim under California consumer protection statutes based on a theory that the claim falsely conveyed to reasonable consumers the product treated a disease. "Greenberg's state law claims challenging the biotin product's efficacy are preempted because the statute only requires substantiation for the ingredient's function on the human body, not the health impact of the product as a whole. Put differently, Congress appears to have created two classes of claims: (1) a structure/function claim that refers only to the ingredient or nutrient's role in the human body, and (2) a disease claim that speaks to the product's effect on the consumer's disease. Greenberg cannot implicitly import a disease claim requirement — evidence showing the product's impact on the consumer's health or disease — into the structure/function claim, given the differences in the statutory requirements for each." *Id*. at 656.

The question before me is whether the challenged statements on the Products are structure/function claims or are implied health claims. If they are structure/function claims, Magpayo's central theory of liability on her state law claims is preempted.[2] While fact-based, this is a determination for the court. *Yamagata v. Reckitt Benckiser LLC*, 445 F. Supp. 3d 28, 33 (N.D. Cal. 2020) ("But the idea that the FDA's dictates may conflict with intuitions only confirms that this preemption determination, while fact-based, depends ultimately on application of the law.").

Magpayo's position is that the FDA would find Walmart's label an implied health claim and not a structure/function claim and, therefore, she is not seeking to impose labelling requirements under California law that differ from the FDCA's requirements. She distinguishes her case from *Dachauer* on two grounds. First, *Dachauer* was determined on summary judgment. Second, in this case the challenge is not only to defendant's use of "heart health" but also to the use of the "heart symbol." It is the use of the heart symbol, according to Magpayo's opposition, that creates the implied health claim. She points to FDA guidance that use of the heart symbol

---

[2] Preemption would not, however, preclude a claim based on the theory that advertising statements are misleading by failing to disclose "a harmful aspect of the nutrient" or that the structure/function claim is "factually false or lacks substantiation." *See Greenberg*, 985 F.3d at 657 (citing *Dachauer*, 913 F.3d at 84 & *Kroessler v. CVS Health Corp.*, 977 F.3d 803, 812 (9th Cir. 2020)).

6

alone "typically" conveys an implied health claim. Oppo. at 12. There is some support for these distinctions. In a footnote, the *Dachauer* panel rejected plaintiff's "suggestion" that he be granted leave to "allege that Defendants make false implied-health claims instead of structure/function claims." *Id*., 848 at n.2. That *is* what Magpayo is alleging here.

Magpayo also relies on 21 C.F.R. § 101.14(a)(1) which explains:

> Health claim means any claim made on the label or in labeling of a food, including a dietary supplement, that expressly or by implication, including "third party" references, written statements (e.g., a brand name including a term such as "heart"), symbols (e.g., a heart symbol), or vignettes, characterizes the relationship of any substance to a disease or health-related condition. Implied health claims include those statements, symbols, vignettes, or other forms of communication that suggest, within the context in which they are presented, that a relationship exists between the presence or level of a substance in the food and a disease or health-related condition.

She also relies on guidance from FDA explaining that the:

> FDA does agree, however, that under §101.14(a)(1), a dietary supplement name that included the word "heart" could be a health claim, depending on the context. Thus, a dietary supplement could be called "HeartTabs" if its claim was "to maintain healthy circulation," or some other role related to the structure or function of the heart that did not imply treatment or prevention of disease. If, however, the product name was not qualified by any further claim in the labeling, the product could be considered, under §101.14(a)(1), to be intended for treatment or prevention of cardiovascular disease.
>
> FDA also believes that the heart symbol has become so widely associated with prevention of heart disease that its use in the labeling of a dietary supplement would be ordinarily considered an implied heart disease prevention claim. Consistent with the examples provided in the January 6, 1993, Federal Register document on health claims (58 FR 2486), however, there may be unusual cases in which, in context, the use of a heart symbol does not imply heart disease prevention.

Regulations on Statements Made for Dietary Supplements Concerning the Effect of the Product on the Structure or Function of the Body, 65 FR 1000-01 at 1022 (Jan. 6. 2000).[3]

---

[3] *See also id*. at 1026 ("One comment requested that the agency clarify whether a picture of an organ is permitted if the claims are appropriate and within the scope of permitted structure/function claims. The comment offered as an example a statement that a product maintains cardiovascular health accompanied by a picture of a heart and circulatory system. FDA agrees that in most cases, a picture of a healthy organ would not be considered a disease claim, if, in the context of the labeling as a whole, it did not imply treatment or prevention of disease. As described in response to comment 51 of section II.I of this document, however, there may be symbols for organs, like the heart symbol, that have become so widely recognized as

7

1    Magpayo's authorities demonstrate that the FDA looks to the context of the whole label to
2 determine whether the use of the symbol creates an implied health claim. *See, e.g., Yamagata v.*
3 *Reckitt Benckiser LLC*, 445 F. Supp. 3d 28, 33–34 (N.D. Cal. 2020) ("So even when an
4 advertising statement is best viewed as a structure/function statement in isolation, it can
5 improperly imply an effect on a disease if other parts of the label associate the supplement with a
6 disease. The product name, any pictures or symbols, citations to journal articles, and statements
7 about the formulation of the product, if printed on the label, are all relevant."). She, however,
8 does not identify anything else on the label – other than use of the heart symbol – that conveys that
9 Walmart is making an implied health claim.

10   Walmart argues that in context there can be no dispute that it is not making an implied
11 health claim because all heart health statements on the label are accompanied by an asterisk that
12 refers consumers to the "DSHEA statement" on the side panel that the "heart health" statements
13 "have not been evaluated by the Food and Drug Administration. This product is not intended to
14 diagnose, treat, cure, or prevent any disease." Because of that disclaimer and the fact that nothing
15 on the label refers to damage to an organ or treatment of a disease, Walmart argues that the
16 challenged statements cannot be considered implied health claims.

17   It also cites an FDA letter that found use of a heart symbol on the label of a dietary
18 supplement was not an implied health claim where the product's label also stated, "Support
19 Cardiovascular Function." *See* Declaration of William P. Cole, Dkt. No. 30-3, Ex. 1. Magpayo
20 contends that this letter and label are distinguishable because the use of the word "Function"
21 clearly denotes a structure/function claim, and the label provided additional context indicating the
22 products were to support "heart tissue" and "blood circulation" which satisfy the structure/function
23 requirement of an "effect on a small aspect of the related structure/function" of heart tissue and
24 circulation, as opposed to conveying anything about heart disease.

25   In *Gallagher v. Bayer AG*, No. 14-CV-04601-WHO, 2015 WL 1056480, at *6 (N.D. Cal.
26 Mar. 10, 2015), I rejected plaintiffs' argument "that by using 'supports heart health' on its

---

28  symbols for disease treatment or prevention, their use in labeling would constitute an implied disease claim.").

8

packaging and advertising, Bayer is representing that its Supplements can prevent, mitigate, or treat 'cardio vascular disease.'" *Id*. at *6. I concluded "supports heart health" – standing on its own – was a structure/function claim. Plaintiffs did not identify any packaging or advertising statements that could shift the statement to an implied health claim. *Id*.; *see also Gallagher v. Bayer*, 2015 WL 4932292 (Aug. 18, 2015) (same). In *Gallagher*, however, I expressly noted that:

> Plaintiffs apparently argue that the heart and immunity claims also violate 21 C.F.R. § 101.14(a)(1). Oppo. at 8 & fn. 43. But that regulation explains that "use Health claim means any claim made on the label or in labeling of a food, including a dietary supplement, that expressly or by implication, including 'third party' references, written statements (e.g., a brand name including a term such as 'heart'), symbols (e.g., a heart symbol), or vignettes, characterizes the relationship of any substance to a disease or health-related condition." Plaintiffs do not allege that Bayer uses the term heart in its brand names or otherwise uses symbols or vignettes in conjunction with the Statements.

*Gallagher v. Bayer AG*, No. 14-CV-04601-WHO, 2015 WL 1056480, at *6 (N.D. Cal. Mar. 10, 2015).

The question here is whether the use of the heart symbol in connection with "supports heart health" changes the analysis in *Gallagher*. Although recognizing that this is a close call, I find that it does not. While the FDA guidance indicates that use of the heart symbol would ordinarily imply a health claim, there is nothing else on Products' label that could imply use of the product to treat heart disease. Instead, as Walmart points out, there is something on this label that *expressly disclaims* treatment of heart disease; the "DSHEA statement" on the side panel that "[t]his product is not intended to diagnose, treat, cure, or prevent any disease." The mere use of the heart symbol, even in connection with the "heart health" and "support heart health" statements, does not create an implied health claim given that the statements are asterisked and lead to the express label disclosure that the product is *not* intended to treat or prevent any disease.

The only other source of context to shift what is facially a structure/function claim to an implied health claim is Magpayo's reference to an online Amazon advertisement that expressly states that the Products "REDUCE THE RISK OF CORONARY HEART DISEASE." FAC ¶ 15. Extra-label advertising statements may be considered when determining whether an otherwise facial structure/function claim becomes an implied health claim. *See Kroessler v. CVS Health*

9

1  *Corp*., 977 F.3d 803, 815 (9th Cir. 2020) (courts may consider "extra-label material when
2  identifying implied disease claims and that those considerations are best made by district courts on
3  a case-by-case basis"); *see also id*. at fn. 9 (in assessing whether an implied health claim is made,
4  "District courts within this circuit have considered factors such as the product's advertisements,
5  the consumer's experience with the product, and market research showing consumer's typical uses
6  of the product.").

That said, there is no allegation that Walmart was responsible for the Amazon advertisement. Even if that allegation could be made, one advertisement without more facts regarding the duration and scope of an advertising campaign is an insufficient basis to turn the structure/function claims on the Products' labels into implied health claims.

At base, the FAC pleads an implied health claim related to the challenged statements and heart symbol. That claim is preempted. *See Seegert v. Rexall Sundown, Inc*., No. 20-55486, 2022 WL 301553, at *2 (9th Cir. Feb. 1, 2022) ("To the extent that Seegert argues Rexall's representations are false or misleading because they present implied disease claims, her state law claims are preempted."). Absent evidence of other statements on the product labels or allegations of widespread or consistent advertising *put out* by Walmart that could create an implied health claim when considered with the challenged statements, Magpayo cannot pursue a cause of action in this case based on a false implied health claim. The only claim she can assert – based on the current FAC identifying the challenged statement and the one advertisement that she has not shown is attributable to Walmart or part of a widespread advertising campaign for the Products – is a structure/function claim. That claim is discussed below.

Because Magpayo may theoretically be able to amend to identify additional language on the labels for some or all of the Products or additional extra-label statements made by Walmart that could preserve her implied health claim theory, she will be given leave to amend.

### B. If A Structure/Function Claim

Magpayo argues that even if I conclude that Walmart is making a structure/function claim, that claim is not preempted – at least not at the motion to dismiss stage – because she has plausibly alleged that Omega-3 supplements do not have a positive "effect on a small aspect of the related

10

structure/function" of heart health and in fact can be detrimental to heart health.

With respect to her first theory, it is unclear if Magpayo is alleging a substantiation claim; *i.e.*, that the Products have not been shown to support the function of heart health in some discrete manner. *See Kroessler*, 977 F.3d at 811 ("Therefore, under California law, a plaintiff retains the burden of production and the burden of proof but can nevertheless challenge a defendant's substantiation . . . By permitting discovery and proceeding to summary judgment, the district court in *Dachauer* confirmed that plaintiffs can challenge defendants' substantiation by pointing to 'matching evidence' contradicting those claims."). She is given leave to amend to expressly plead, if she chooses to do so, a lack of substantiation claim.

On the second theory, the Ninth Circuit has allowed California consumer protection claims to proceed, even on a structure/function claim, where there are plausible allegations that the supplement could cause harm to consumers. *See Krossler supra*; *see also Dachauer*, 913 F.3d at 849 ("Conceivably, evidence that a supplement endangered users by increasing their risk of death could prove that a structure/function claim that omitted the risk was misleading. But the record lacks evidence that vitamin E supplements are actually harmful, as opposed to simply useless at reducing all-cause mortality (which they do not claim to reduce)."). Magpayo appears to invoke this second theory in her FAC where she alleges potential harm from taking "some" fish oil supplements. FAC ¶¶ 52 (data suggest these supplements may increase the risk of atrial fibrillation), 58-65 (in order to secure recommended amounts of PA and DHA recommended by AHA, consumers would have to take 10 or more fish oil supplements a day negating benefits by increasing intake of saturated fats and oxidized lipids).

Walmart points out, however, that these potential harms – resulting either from contaminants, spoiled oil, or the need to take high doses of fish oil supplemental to achieve any purported benefits – are not alleged in the FAC to be present in or created by use of *Walmart's* fish oil supplements. She responds that she does not need to make these allegations at this stage because what she has alleged suggests that it is at least plausible that Walmart's supplements suffer from contamination or are otherwise harmful to consumers. She points as support to some studies she cites for *other* points in her FAC. Oppo. at 13-16. She also claims that "simple math"

11

1    shows that an elevated risk for high cholesterol is created by Walmart's supplements because a

2    consumer would need to take 15 capsules a day of the Products to achieve the highest level of

3    recommended EPA/DHA (4g), resulting in 150 mg of cholesterol which is 50% of the

4    recommended daily intake.  *See* Oppo. at 15-17.

5        Magpayo's allegations regarding harm supported by "studies" as well as the "simple math"

6    are not alleged or identified in the FAC.  Magpayo is given leave to amend to allege a

7    structure/function claim that would not be preempted as based on a "lack of substantiation" theory

8    or a "causes harm" theory, by alleging facts supporting the plausibility of those theories with

9    respect to Walmart's Products.

## II.   PRIMARY JURISDICTION

Walmart asks me to dismiss or stay this case under the doctrine of primary jurisdiction. "The primary jurisdiction doctrine allows courts to stay proceedings or to dismiss a complaint without prejudice pending the resolution of an issue within the special competence of an administrative agency." *Clark v. Time Warner Cable*, 523 F.3d 1110, 1114 (9th Cir. 2008). The doctrine is a "prudential" one, "under which a court determines that an otherwise cognizable claim implicates technical and policy questions that should be addressed in the first instance by the agency with regulatory authority over the relevant industry rather than by the judicial branch." *Id*. (*citing Syntek Semiconductor Co. v. Microchip Tech. Inc.,* 307 F.3d 775, 780 (9th Cir. 2002)). However, "[n]ot every case that implicates the expertise of federal agencies warrants invocation of primary jurisdiction. Rather, the doctrine is reserved for a 'limited set of circumstances' that 'requires resolution of an issue of first impression, or of a particularly complicated issue that Congress has committed to a regulatory agency.'" *Astiana v. Hain Celestial Group, Inc*., 783 F.3d 753, 760 (9th Cir. 2015) (quoting *Clark*, 523 F.3d at 1114).

To determine whether to defer to an agency, the Ninth Circuit has traditionally examined the factors set forth in *General Dynamics*, and found that the doctrine applies in cases where there is: "(1) [a] need to resolve an issue that (2) has been placed by Congress within the jurisdiction of an administrative body having regulatory authority (3) pursuant to a statute that subjects an industry or activity to a comprehensive regulatory authority that (4) requires expertise or

1 uniformity in administration." *Syntek*, 307 F.3d at 781 (citing U.*S. v. Gen. Dynamics Corp.*, 828
2 F.2d 1356, 1362 (9th Cir. 1987)). "[C]ourts must also consider whether invoking primary
3 jurisdiction would needlessly delay the resolution of claims," and under Ninth Circuit precedent, "
4 'efficiency' is the 'deciding factor' in whether to invoke primary jurisdiction." *Astiana*, 783 F.3d
5 at 760 (quoting *Rhoades v. Avon Prods., Inc.*, 504 F.3d 1151, 1165 (9th Cir. 2007)).

In support of dismissal or stay, Walmart argues that it is up to the FDA to determine whether its use of the heart symbol automatically converts the structure/function claim into an implied health claim given the FDA's jurisdiction and responsibility to issue guidance on the issue in response to citizen petitions. Mot. at 24-25. It posits that Magpayo should ask the FDA, through the citizen petition mechanism, to address Walmart's specific label for the Omega-3 supplement, before being allowed to proceed with this case. *Id*.

The request to dismiss or stay based on primary jurisdiction is DENIED. As discussed above, the FDA has already issued significant guidance regarding the types of claims at issue in this case. Moreover, neither side identifies any ongoing proceedings or request for guidance pending before the FDA that might bear on the resolution of this case. In this posture, there are no efficiencies to be gained by staying this case under the doctrine of primary jurisdiction. *See e.g., Gatling-Lee v. Del Monte Foods, Inc.*, No. 22-CV-00892-JST, 2023 WL 11113888, at *7 (N.D. Cal. Mar. 28, 2023), *reconsideration denied sub nom. Nacarino v. Del Monte Foods, Inc.*, No. 22-CV-00892-JST, 2024 WL 847925 (N.D. Cal. Feb. 28, 2024 (denying motion to defer based on primary jurisdiction because "this is not a case in which further guidance from the FDA is necessary in order for the Court to decide the case.")

## III.    FAILURE TO STATE CLAIMS

Finally, Walmart moves to dismiss Magpayo's state law claims and requests for relief on their merits, arguing that she lacks standing or has otherwise failed to allege facts supporting her state law claims. Mot. at 16-23. Whether she can plausibly allege her state law deception-based claims depends on whether she can state a not-preempted theory of deception or harm. Walmart may reassert its failure to state a claim arguments, attacking the revised and clarified theory of

13

deception asserted, if she files an amended complaint.[4]

## CONCLUSION

Walmart's motion to dismiss the FAC is GRANTED because Magpayo's theory of deception and state law claims as currently alleged are preempted. Walmart's request to dismiss or stay this case under the doctrine of primary jurisdiction is DENIED. Magpayo is given leave to amend to attempt to plead a theory of deception or harm that is not preempted. Any such amended complaint must be filed within twenty (20) days of the date of this Order.

**IT IS SO ORDERED.**

Dated: October 18, 2024



William H. Orrick
United States District Judge

---

[4] In any further amended complaint, plaintiff should not reallege claims that she admitted in her Opposition she was no longer pursuing; specifically, a UCL unlawful claim based on violation of federal law and a claim for equitable restitution. Oppo. at 3 n.2.