**TREEHOUSE LAW, LLP**
Ruhandy Glezakos (SBN 307473)
Benjamin Heikali (SBN 307466)
Joshua Nassir (SBN 318344)
Katherine Phillips (SBN 353048)
3130 Wilshire Blvd., Suite 555
Santa Monica, CA 90403
Telephone: (310) 751-5948
rglezakos@treehouselaw.com
bheikali@treehouselaw.com
jnassir@treehouselaw.com
kphillips@treehouselaw.com

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Pearl Magpayo, individually, and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>Walmart Inc.,<br><br>Defendant. | CASE NO.: 3:24-cv-01350-WHO<br><br>**SECOND AMENDED CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Pearl Magpayo ("Plaintiff"), individually, and on behalf of all others similarly situated, by and through her attorneys, brings this Second Amended Class Action Complaint against Walmart Inc. ("Defendant"), based upon personal knowledge as to herself, and upon information, investigation and belief of her counsel.

## **INTRODUCTION**

1.    Heart health is a major concern for consumers in the United States.[1]

2.    It is a national health problem that has spurred an entire industry dedicated to marketing Omega-3 supplements, often with marketing known to mislead reasonable consumers.

3.    "The sale of fish oil supplements is a multibillion-dollar industry, and many people take fish oil capsules daily, believing the omega-3 fatty acids they contain are good for their overall health, particularly for their heart."[2]

4.    "Most research shows that over-the-counter fish oil supplements don't offer cardiovascular benefits, but that hasn't stopped marketers from touting them for

---

[1] Cathy Lewis, *More Than Half of U.S. Adults Don't Know Heart Disease Is Leading Cause Of Death, Despite 100-Year Reign*, Am. Heart Ass'n ("AHA") (Jan. 24, 2024), http://newsroom.heart.org/news/more-than-half-of-u-s-adults-dont-know-heart-disease-is-leading-cause-of-death-despite-100-year-reign.

[2] Lindsey Bever, *Marketers Overstate Fish Oil Claims for Heart Health, Study Shows*, Wash. Post (Aug. 23, 2023), https://www.washingtonpost.com/wellness/2023/08/23/fish-oil-supplements-heart-benefits/; *see also* ASCEND Study Collaborative Grp., *Effects of n−3 Fatty Acid Supplements in Diabetes Mellitus*, 379 N. Eng. J. Med. 1540 ("ASCEND Study") (Oct. 18, 2018), https://www.nejm.org/doi/full/10.1056/nejmoa1804989 (finding that in a randomized trial of more than 15,000 patients with diabetes, a risk factor for cardiovascular disease, the risk of a serious cardiovascular event was not significantly different between those who were taking an omega-3 supplement and those who were not).

heart health, a new study shows."[3]

5.      In a study by JAMA Cardiology, the labels of more than 2,800 fish oil supplements were examined.[4]

6.      It was found that a majority of fish oil supplements make misleading claims increasing the potential for consumer misinformation, and that certain heart health claims are made on fish oil products even though there is a lack of trial data showing efficacy.[5]

7.      Indeed, as to heart disease specifically (one of the indicators of heart health) even the U.S. Department of Health and Human Services, National Center for Complementary and Integrative Health ("NIH") has stated that "[r]esearch indicates that omega-3 supplements don't reduce the risk of heart disease."[6]

8.      Despite such evidence, companies like Defendant continue to make false

---

[3] Bever, *supra* note 2.

[4] Joanna N. Assadourian et al., *Health Claims and Doses of Fish Oil Supplements in the US*, 8(10) JAMA Cardiology 984, 986 (Aug. 23, 2023), https://jamanetwork.com/journals/jamacardiology/fullarticle/2808769.

[5] *Id.* at 985.

[6] *Omega-3 Supplements: In Depth*, Nat'l Ctr. Complimentary & Integrative Health ("NIH") - U.S. Dep't Health & Hum. Servs. (Apr. 2018), https://www.nccih.nih.gov/health/omega3-supplements-in-depth (scroll down to heading "What Do We Know About the Effectiveness of Omega-3s" and click on the "+" button to the right of "Heart Disease" subheading) ("A 2018 analysis of 10 major omega-3 supplementation studies (77,917 total participants, all at high risk of heart disease), each of which involved at least 500 participants and a treatment duration of at least a year, found no evidence that omega-3s could reduce the risk of fatal or nonfatal coronary heart disease.") (last visited March 2, 2024). *Id.* ("In 2016, the U.S. Government's Agency for Healthcare Research and Quality (AHRQ) did a comprehensive evaluation of 98 studies of omega-3s and heart disease, including both diet and supplementation studies. They did not find evidence that omega-3s can reduce the risk of heart attacks or death from heart disease.").

-2-

and misleading claims related to Omega-3 supplements because reasonable consumers are particularly vulnerable to such claims.

9.    As stated by registered dietitian Scott Keatley, co-owner of Keatley Medical Nutrition Therapy, "[m]any people take fish oil because of longstanding beliefs about its potential health benefits, particularly for heart health."[7]

10.    "***The supplement industry***, anecdotal evidence and earlier studies ***have often promoted these benefits***. Once a narrative becomes deeply embedded in popular culture, it can be difficult to change, even when new evidence emerges."[8]

11.    This case involves Omega-3 supplements also touting purported heart health benefits—Defendant's Spring Valley Fish Oil Omega-3 supplements (the "Products")[9]. The Products' front label includes the following prominent heart health representations:

- "Fish Oil is a source of Omega-3 fatty acids that support heart health"
- "Heart Health"
- A heart symbol

(Collectively, "Heart Health Representations"). *See example on next page.*

12.    None of the labels on the Products mention the risks of fish oil supplements to heart health, including the increased risk of atrial fibrillation ("Heart Health Omissions") (collectively the "Heart Health Representations and Omissions").

---

[7] Korin Miller, *Most Fish Oil Supplements Make Unsupported Heart Health Claims, Finds New Study. Here's Why Experts Say Most People Can Skip Them.*, yahoo!life (Aug. 23, 2023), https://www.yahoo.com/lifestyle/fish-oil-supplements-heart-heart-study-150006741.html.

[8] *Id.* (emphasis added).

[9] The Products are fully defined in paragraph 28.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



-4-

13.    Collectively, the Heart Health Representations and Omissions lead reasonable consumers to believe the Products' Omega-3s support heart health.

14.    Unbeknownst to consumers, the Heart Health Representations and Omissions are false and misleading because the Products' Omega-3s do not support heart health and could even harm heart health. Specifically, the Products do not reduce the risk of heart disease or adverse cardiovascular events (including heart attacks, strokes, unstable angina, arrhythmias, heart failure, or death from coronary heart disease), nor do they improve homocysteine levels (a marker of heart health). Indeed, the Products can actually harm heart health by increasing the risk of atrial fibrillation. As discussed in more detail below, these allegations are well supported by current studies on Omega-3 supplementation, and by leading authorities in the field of heart health like the NIH.

15.    Because the Products do not support heart health, reasonable consumers have been misled by the Products' Heart Health Representations.

16.    The Heart Health Representations on the Products are known as structure/function claims (a claim that a product is intended to affect the structure or any function of the body, e.g., supports heart health).

17.    While dietary supplements are permitted to make such claims, the FDA requires that they be "truthful and non-misleading."[10]

18.    As set forth, herein, the Heart Health Representations and Omissions would be considered false and misleading based on Plaintiff's controverting evidence—studies, NIH fact sheets, guidance from medical professionals and organizations—

---

[10] Regulations on Statements Made for Dietary Supplements Concerning the Effect of the Product on the Structure or Function of the Body, 65 Fed. Reg. 1000 at 1003.

demonstrating that not only do the Products fail to support heart health, but they also may harm heart health.

19.     Plaintiff and other consumers purchased the Products and paid a price premium relying on the false and deceptive labeling, advertising, and marketing of the Products.

20.     Had Plaintiff and other consumers been aware that the Products do not support heart health, they would not have purchased the Products or would have paid significantly less for them.

21.     Accordingly, Plaintiff and Class members have been injured by Defendant's deceptive business practices.

## JURISDICTION AND VENUE

22.     This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)(2), because this is a class action filed under Rule 23 of the Federal Rules of Civil Procedure, there are thousands of proposed Class members, the aggregate amount in controversy exceeds $5,000,000 exclusive of interest and costs, and Defendant is a citizen of a state different from at least some members of the proposed Classes, including Plaintiff.

23.     This Court has personal jurisdiction over Defendant because Defendant has sufficient minimum contacts in California, or otherwise intentionally avails itself of the markets within California, through its sale of goods and products (including the Products) in California and to California consumers.

24.     Venue is proper in this judicial District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims at issue in this case occurred in this District. Specifically, Plaintiff resides in

-6-

this District and she purchased one of the Products at issue in this case in this District during the statute of limitations period.

## **PLAINTIFF**

25.    Plaintiff Pearl Magpayo is a citizen of California and currently resides in Hayward, California. During the relevant class period, including in or around May or June 2023, Plaintiff purchased the Spring Valley Omega-3 Fish Oil Soft Gels, Heart Health Dietary Supplement, 1000 mg from a Walmart in either Union City or San Leandro, California. Based on the representations "Heart Health," "Fish Oil is a source of Omega-3 fatty acids that ***support heart health***," and the heart symbol on the front label of the Product, Plaintiff reasonably believed the Product would support heart health. Plaintiff was also misled by Defendant's failure to disclose the heart health risks associated with the Product, as nothing on the labeling alerted her to the fact that the Products could actually harm her heart health. Had she known the Product does not support heart health (and/or could actually harm her heart health), she would not have purchased it, or would have paid significantly less for it. As such, Plaintiff has been directly financially injured by Defendant's false and misleading labeling.

26.    Despite Defendant's misrepresentations, Plaintiff would purchase the Products, as labeled and marketed, if they actually supported heart health. Although Plaintiff regularly shops at stores that carry the Products, absent an injunction of Defendant's deceptive labeling, she will be unable to rely with confidence on Defendant's labeling and advertising of the Products in the future. Furthermore, while Plaintiff currently believes the Products' labeling and advertising is inaccurate, she lacks personal knowledge as to Defendant's specific business practices. Thus, she will not be able determine whether the Products truly abide by their Heart Health

-7-

Representations. This leaves doubt in her mind as to the possibility that at some point in the future the Products could be made in accordance with the Heart Health Representations on the Products' front label and advertising. In other words, she will reasonably, but incorrectly, assume that the Products have improved. This uncertainty and/or mistaken belief, coupled with her desire to purchase a Product supporting heart health, is an ongoing injury that can and would be rectified by an injunction enjoining Defendant from making the alleged misleading representations and omissions. In addition, other Class members will continue to purchase the Products, reasonably but incorrectly, believing that they support heart health, and that they will not harm heart health.

## **DEFENDANT**

27.    Defendant is a Delaware limited liability company with its principal place of business in Bentonville, Arkansas. Defendant is an American multinational retail corporation that sells a variety of consumer goods, including supplements.

## **FACTUAL ALLEGATIONS**

28.    At issue in this Complaint are the following Spring Valley Omega-3 Fish Oil products (collectively, the "Products"):

- Spring Valley Omega-3 Fish Oil Soft Gels, Heart Health Dietary Supplement, 1000 mg, 60 Count;

- Spring Valley Proactive Support Omega-3 Mini from Fish Oil Dietary Supplement, 1000 mg, 120 Count;

- Spring Valley Omega-3 Fish Oil For Heart and Brain Health, Dietary Supplement Soft gels, 1000 mg, 60 Count;

- Spring Valley Maximum Care Omega-3 from Fish Oil Eye Brain Bone & Heart Health Dietary Supplement Soft gels, 2000 mg, 120 Count;

- Spring Valley Fish Oil Omega-3 General & Heart Health Dietary Supplement Soft gels, 500 mg, 60 Count, 120, & 180 count;

- Spring Valley Proactive Support Omega-3 from Fish Oil Heart General & Brain Health Dietary Supplement Soft gels, 1000 mg, 120 Count;

- Spring Valley Omega-3 Fish Oil Soft Gels, 1000 mg, 180 Count;

- Spring Valley Omega-3 Fish Oil Brain & Heart Health Dietary Supplement Soft gels, 2000 mg, 180 count; and

- Spring Valley Omega-3 Natural Lemon Flavor Dietary Supplement Twin Pack, 1000 mg, 360 count.

29.    The Products' front labels include the following heart health representations (1) "Heart Health"; (2) a heart symbol; (3) and "Fish Oil is a source of Omega-3 fatty acids that support heart health." The Products also omit the heart health risks of taking fish oil supplements. *See below.*



30.    Unfortunately for consumers, Defendant engages in false and misleading business practices to gain a competitive edge in the market, all at the expense of

unsuspecting consumers. Defendant accomplishes this by using front label representations and omissions that lead reasonable consumers to believe the Products' Omega-3s support heart health.

31.    Unbeknownst to consumers, the Products' Heart Health Representations and Omissions are false and misleading because the Products' Omega-3s do not support heart health and may even harm heart health. Specifically, the Products do not reduce the risk of heart disease or adverse cardiovascular events (including heart attacks, strokes, unstable angina, arrhythmias, heart failure, or death from coronary heart disease), nor do they improve homocysteine levels (a marker of heart health). Indeed, the Products can actually harm heart health by increasing the risk of atrial fibrillation. As discussed in more detail below, these allegations are well supported by current studies on Omega-3 supplementation, and by leading authorities in the field of heart health like the NIH.

32.    In fact, as discussed in more detail below, "most [recent studies] found little or no evidence for a protective effect of omega-3 supplements against heart disease."[11]

## Heart Health and the Fish Oil Industry

33.    Consumer concern for heart health has spurred an entire industry dedicated to marketing Omega-3 supplements, often with marketing known to mislead reasonable consumers.

34.    Americans are rightly concerned about their heart health because one person dies every 33 seconds in the United States from heart disease—a marker of

---

[11] NIH, *supra* note 6.

heart health.

35.    In fact, the most common type of heart disease, coronary heart disease, killed 375,476 people in 2021.

36.    In response, omega-3 supplements have skyrocketed in popularity, and created "a multibillion-dollar industry" that encourages people to "take fish oil capsules daily" because they "believe[] the omega-3 fatty acids they contain are good for their overall health, particularly for their heart."[12]

37.    Several news outlets have recently brought the effectiveness of omega-3 supplements into question. For example, the New York Post described fish oil supplements as "worthless" and the health claims they make as "outrageous,"[13] while the Washington Post said that "the vagueness of the wording used by fish oil marketers could lead to misinformation about the role of the dietary supplement."[14]

## Studies Finding that Omega-3 Supplements<br>Do Not Support Heart Health

38.    R. Preston Mason, a member of Cardiovascular Division at Brigham and Women's Hospital and Harvard Medical School since 2002, wrote that:

> Consumers have been told so many times that dietary fish oil supplements promote heart health that it seems to be accepted as factual. But this conventional thinking is not supported by the science. After decades of promises that fish oil "may work," the lack of demonstrated benefit leads me to conclude that consumers are wasting their money on

---

[12] Bever, *supra* note 2.

[13] Marc Lallanilla, *Why Fish Oil Supplements Are Basically Worthless: Study*, N.Y. Post (Oct. 2, 2023), https://nypost.com/2023/10/02/why-fish-oil-supplements-are-basically-worthless-study/.

[14] Bever, *supra* note 2.

supplements in an effort to reduce cardiovascular risk.[15]

39.    Heart health can be measured by certain criteria: the presence or absence of disease, reduction of cardiovascular events (including heart attacks, strokes, unstable angina, arrhythmias, heart failure, or death from coronary heart disease), and improving markers of heart health like homocysteine levels.[16] Thus, whether over-the-counter omega-3 supplements improve these measures of heart health is relevant to whether the Products actually support heart health.

40.    In this case, studies show that although consumers have been led to believe that taking fish oil supplements promotes heart health, "multiple randomized clinical trials have shown no cardiovascular benefits to fish oil supplements."[17]

41.    For example, the ASCEND Study concluded that "there was no significant difference in the incidence of serious vascular events between [patients with diabetes but without evidence of cardiovascular disease] who received n−3 fatty

---

[15] R. Preston Mason, *The False Promise of Fish Oil Supplements*, Scientific American (Aug. 22, 2019), https://blogs.scientificamerican.com/observations/the-false-promise-of-fish-oil-supplements/.

[16] Paul Ganguly, *Role Of Homocysteine In The Development Of Cardiovascular Disease*, 14(6) Nutrition J. 1 (Jan. 10, 2015), http://www.nutritionj.com/content/14/1/6.

[17] Assadourian, *supra* note 4, at 985; *see also* Julie Corliss, *The False Promise Of Fish Oil Supplements*, Harvard Health Publishing (Dec. 1, 2023), https://www.health.harvard.edu/heart-health/the-false-promise-of-fish-oil-supplements ("multiple randomized trials pitting fish oil against placebos show no evidence of heart-related benefits from fish oil supplements."); Ann Marie Navar, M.D., Ph.D., *Ask The Cardiologist: Do Fish Oil Supplements Reduce the Risk of Heart Disease?*, UT Southwestern Med. Center (Mar. 13, 2023), https://utswmed.org/medblog/fish-oil-pills-heart/ ("Multiple randomized trials have compared fish oil capsules with placebo to look for cardiovascular benefit – and found nothing") (citing to ASCEND study *supra* note 2 and Manson study *infra* note 20).

acids and those who received placebo" and that "[t]hese findings, together with results of earlier randomized trials involving patients with and those without diabetes, do not support the current recommendations for routine dietary supplementation with n-3 fatty acids to prevent vascular events."[18]

42. Meta-analyses of supplementation with marine-derived omega-3 fatty acids have reached a similar conclusion. Finding, for example, that "marine-derived omega-3 fatty acids . . . had no significant association with reductions in fatal or nonfatal coronary heart disease or any major vascular events."[19]

43. Similarly, another study found that: "Supplementation with n−3 fatty acids did not result in a lower incidence of major cardiovascular events or cancer than placebo."[20]

44. In 2020, the STRENGTH Randomized Clinical Trial stated that its "findings [did] not support use of this omega-3 fatty acid formulation to reduce major adverse cardiovascular events in high-risk patients."[21]

---

[18] ASCEND study, *supra* note 2.

[19] Theingi Aung et al., *Associations of Omega-3 Fatty Acid Supplement Use with Cardiovascular Disease Risks: Meta-analysis of 10 Trials Involving 77 917 Individuals*, 3(3) JAMA Cardiology 225, 226 (Mar. 21, 2018) https://jamanetwork.com/journals/jamacardiology/fullarticle/2670752.

[20] JoAnn E. Manson et al*., Marine n−3 Fatty Acids and Prevention of Cardiovascular Disease and Cancer*, 830(1) N. Eng. J. Med. 23, 23 (Jan. 3, 2019), https://www.nejm.org/doi/10.1056/NEJMoa1811403.

[21] Stephen J. Nicholls et al., *Effect of High-Dose Omega-3 Fatty Acids vs Corn Oil on Major Adverse Cardiovascular Events in Patients at High Cardiovascular Risk: The STRENGTH Randomized Clinical Trial* ("STRENGTH Trial"), 324(22) JAMA 2268, 2268 (Nov. 15, 2020), https://jamanetwork.com/journals/jama/fullarticle/2773120.

45.    Omega-3 supplements also do not impact the other markers of heart health. For example, a study published by the Journal of Research in Pharmacy Practice found that "Omega-3 does not seem to be able to change the inflammatory markers significantly, particularly homocysteine."[22]

46.    The Omega-3s in the Products also fail to reduce the risk of heart disease or heart attacks. Specifically, the U.S. Department of Health and Human Services, National Center for Complementary and Integrative Health ("NIH") states that "[r]esearch indicates that omega-3 supplements don't reduce the risk of heart disease" and evidence does not suggest that omega-3s reduce the risk of heart attacks. [23]

47.    In support, the NIH cites to two separate findings, including the 2018 meta-analysis discussed in paragraph 48 and the 2016 AHRQ study described below:

A 2018 analysis of 10 major omega-3 supplementation studies (77,917 total participants, all at high risk of heart disease), each of which involved at least 500 participants and a treatment duration of at least a year, found no evidence that omega-3s could reduce the risk of fatal or nonfatal coronary heart disease.

* * *

In 2016, the U.S. Government's Agency for Healthcare Research and Quality (AHRQ) did a comprehensive evaluation of 98 studies of omega-3s and heart disease, including both diet and supplementation studies. They did not find evidence that omega-3s can reduce the risk of heart attacks or death from heart disease.[24]

48.    "Several other analyses of the evidence have been done in the last few

---

[22] Tahereh Gholipur-Shahraki et al., *Effect of Omega-3 Fatty Acids Supplementation on Homocysteine Level in Patients Undergoing Continuous Ambulatory Peritoneal Dialysis*, 11(2) J. Rsch. Pharm. Prac. 80, 80 (Dec. 14, 2022), https://pmc.ncbi.nlm.nih.gov/articles/PMC9926915/.

[23] NIH, *supra* note 6.

[24] *Id.*

years (2012 or later), and like the 2018 analysis and the AHRQ report, most found little or no evidence for a protective effect of omega-3 supplements against heart disease."[25]

49.    Based on such findings, several experts have debunked the myth that fish oil supplements are linked to heart health benefits. For example, in an interview with health.com, Timothy Jacobson, MD, chief cardiologist for Kaiser Permanente in the Northwest, stated that:

> "There have now been a large number of well-conducted studies which have not shown a cardiac benefit to taking over-the-counter fish oil supplements," . . .

> In fact, Jacobson said, taking fish oil could even have adverse effects for some people. "There is data these supplements may increase the risk of atrial fibrillation," he said. [26]

50.    Dr. Ann Marie Navar, associate professor of medicine at University of Texas Southwestern Medical School, states "as a preventive cardiologist, I see patients in clinic all the time taking fish oil with the belief it is helping their heart. They are often surprised when I tell them that randomized trials have shown no benefit for fish oil supplements on heart attacks or strokes."[27]

---

[25] *Id.*

[26] Sarah Garone, *Study: Majority of Fish Oil Supplements Make Unfounded Health Claims*, health.com (Aug. 29, 2023), https://www.health.com/fish-oil-supplements-for-heart-health-7852475.

[27] Miller, *supra* note 7.

-15-

51.    Indeed, as stated in the Washington Post, "[m]ost research shows that over-the-counter fish oil supplements don't offer cardiovascular benefits, but that hasn't stopped marketers from touting them for heart health, a new study shows."[28]

52.    The lack of scientific support for heart health claims on fish oil supplements has led to a report from JAMA Cardiology examining the potential for consumer deception.[29]

53.    In the report, the labels of more than 2,800 fish oil supplements were examined. The report found:[30]

- "One in 5 US adults older than 60 years takes fish oil supplements often for heart health despite multiple randomized clinical trials showing no data for cardiovascular benefit for supplement-range doses. Statements on the supplement labels may influence consumer beliefs about health benefits."

- Heart health claims (e.g., "promotes heart health") were the most common health claims made on fish oil supplements.

- Results of this cross-sectional study suggest that the majority of fish oil supplement labels make heart health claims, usually in the form of structure/function claims, that imply a health benefit across a variety of organ systems despite a lack of trial data showing efficacy.

- Results of this cross-sectional study suggest that fish oil supplement labels frequently include heart health claims in the form of structure/function claims that imply health benefits across a wide range of organ systems,

---

[28] Bever, *supra* note 2.

[29] Assadourian, *supra* note 4, at 984.

[30] *Id.*

increasing potential for consumer misinformation.

54.     The JAMA Cardiology report shows that Plaintiff and other reasonable consumers are in fact being misled by claims like "***supports heart health***," when several companies, like Defendant, have no support for such claims.

### The Potential Risks of Omega-3 Fish Oil Supplements

55.     Atrial fibrillation is heart arrhythmia that causes an irregular heart rhythm, which "usually result[s] from the effects of the heart not pumping as well as it should." [31] There is no question that atrial fibrillation is a marker of heart health, and that an increased risk of atrial fibrillation is harmful to heart health.

56.     In a large new study that was recently published, it was found that "[f]or people with a healthy cardiovascular profile, regular use of fish oil supplements . . . was associated with ***an increased risk of atrial fibrillation***" and that it "might be a risk factor for . . . stroke [.]"[32]

57.     In 2020, the STRENGTH Randomized Clinical Trial also found that consumption of Omega-3 supplements increased the risk of atrial fibrillation. Indeed, the trial was stopped after participants were treated for a median of about 3.5 years

---

[31] Atrial Fibrillation Symptoms, Johns Hopkins Medicine, https://www.hopkinsmedicine.org/health/conditions-and-diseases/atrial-fibrillation/afib-symptoms (last visited Nov. 5, 2024).

[32] Ge Chen et al., *Regular Use of Fish Oil Supplements and Course of Cardiovascular Diseases: Prospective Cohort Study*, 3 BJM Med. 1, 6, 8 (May 21, 2024), https://bmjmedicine.bmj.com/content/3/1/e000451.info (additionally, "findings do not support the use of fish oil or omega 3 fatty acid supplements for the primary prevention of incident atrial fibrillation or other specific clinical cardiovascular disease events in generally healthy individuals").

when the probability of benefit from omega-3 supplementation appeared low and the supplemented group had a higher incidence of atrial fibrillation.[33]

58.     Based on such findings, Gregory Curfman, MD, Assistant Professor of Medicine at Harvard Medical School and former editor-in-chief of Harvard Health Publishing concluded that "[p]atients who choose to take omega-3 fatty acids, especially in high doses, ***should be informed of the risk of [atrial fibrillation]*** and followed up for the possible development of this common and potentially hazardous arrhythmia."[34]

59.     For these reasons, other medical professionals, like Timothy Jacobson, MD, chief cardiologist for Kaiser Permanente in the Northwest, also state that "[t]here is data these supplements may increase the risk of atrial fibrillation."[35]

60.     Based on such allegations, it is more than plausible that the Products pose a risk of harm to consumers, and that consumers are being misled by the Heart Health Representation and Omissions.

**The Products Make False and Misleading Structure/Function Claims**

61.     The FDA has taken significant precautions to ensure that consumers are not misled by structure/function claims (any claim that a product is intended to affect

---

[33] STRENGTH Trial, *supra* note 21, at 2272, 2276 ("With regard to prespecified tertiary end points, an increased rate of investigator-reported new-onset atrial fibrillation was observed in the omega-3 CA group.").

[34] Gregory Curfman, Omega-3 Fatty Acids and Atrial Fibrillation, 325(11) JAMA 1063 (Mar. 16, 2021), https://doi.org/10.1001/jama.2021.2909 (emphasis added) (finding "there may be a dose-related risk of [atrial fibrillation] with omega-3 fatty acid intake").

[35] Sarah Garone, *Study: Majority of Fish Oil Supplements Make Unfounded Health Claims*, health.com (Aug. 29, 2023), https://www.health.com/fish-oil-supplements-for-heart-health-7852475.

-18-

the structure or any function of the body [e.g., *supports heart health*]) made on dietary supplements by requiring such claims to be "truthful and non-misleading."[36]

62.    Structure/function claims violate both state and federal law if they are false or misleading in any respect. Because Defendant's Heart Health Representations (e.g., "Omega-3 fatty acids that support heart health") are false and misleading structure/function claims, they are also unlawful.

63.    Indeed, a JAMA study intended to "evaluate health claims made on the labels of fish oil supplements in the US" found that "most [fish oil supplement] labels use structure/function claims to imply cardiovascular benefit (eg, supports heart health)" and ultimately concluded that "fish oil supplement labels frequently include . . . structure/function claims that imply health benefits across a wide range of organ systems, increasing potential for consumer misinformation."[37]

64.    Here, as demonstrated by the studies cited above, the Heart Health Representations are false and misleading structure/function claims because the Products do not support heart health, and may even harm heart health.

65.    As the entity responsible for the development, manufacturing, packaging, labeling, advertising, distribution and sale of the Products, Defendant knew or should have known that the Products falsely and deceptively represent that they support heart health.

66.    Defendant also knew or should have known that Plaintiff and other consumers, in purchasing the Products, would rely on Defendant's front label Heart

---

[36] 65 Fed. Reg. 1000, *supra* note 10, at 1003.

[37] Assadourian, *supra* note 4, at 986, 988.

Health Representations and Omissions. Nonetheless, Defendant deceptively advertises the Products in order to mislead consumers and gain an advantage over other fish oil supplements that do not use deceptive claims like the Heart Health Representations and Omissions.

67.    Consumers are willing to pay more for the Products based on the belief that the Products will support their heart health, and will not harm their heart health. Plaintiff and other consumers would have paid significantly less for the Products, or would not have purchased them at all, had they known the truth about them. Thus, through the use of misleading representations, Defendant commands a price that Plaintiff and the Class would not have paid had they been fully informed. Therefore, Plaintiff and other consumers purchasing the Products have suffered injury in fact and lost money as a result of Defendant's false and deceptive practices, as described herein.

## **CLASS ACTION ALLEGATIONS**

68.    Plaintiff brings this class action pursuant to Fed. R. Civ. P 23 and all other applicable laws and rules, individually, and on behalf of all members of the following Classes:

**California Class**
All residents of California who purchased any of the Products within the applicable statute of limitation ("California Class").

**California Consumer Subclass**
All residents of California who purchased any of the Products for personal, family, or household purposes, within the applicable statute of limitations period ("California Consumer Subclass").

69.    The California Class and California Consumer Subclass are referred to collectively as the "Classes."

SECOND AMENDED CLASS ACTION COMPLAINT

70.    Excluded from the Classes are the following individuals and/or entities: Defendant and its parents, subsidiaries, affiliates, officers and directors, current or former employees, and any entity in which Defendant has a controlling interest; all individuals who make a timely election to be excluded from this proceeding using the correct protocol for opting out; and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

71.    Plaintiff reserves the right to modify or amend the definition of the proposed Classes and/or add subclasses before the Court determines whether class certification is appropriate.

72.    Plaintiff is a member of both Classes.

73.    **Numerosity:** Members of each Class are so numerous and geographically dispersed that individual joinder of all Class members is impracticable. The precise number of Class members is unknown to Plaintiff but is likely to be ascertained by Defendant's records. At a minimum, there are likely thousands of Class members.

74.    **Commonality:** There are questions of law and fact common to the proposed class(es). Common questions of law and fact include, without limitations:

      a.  whether Defendant's course of conduct alleged herein violates the statutes and other laws that are pled in this Complaint;

      b.  whether reasonable consumers would rely upon Defendant's representations and omissions about the Products and reasonably believe the Products' Omega-3s support heart health;

      c.  whether Defendant knew or should have known its representations and omissions were false or misleading;

SECOND AMENDED CLASS ACTION COMPLAINT

d.  whether certification of each Class is appropriate under Rule 23;

e.  whether Plaintiff and the members of each Class are entitled to declaratory or injunctive relief, and/or other relief, and the scope of such relief; and

f.  the amount and nature of the relief to be awarded to Plaintiff and the Classes.

75.  **Typicality:** Plaintiff's claims are typical of the other Class members because Plaintiff, as well as Class members, purchased one of the Products and relied on the representations and omissions made by the Defendant about the Product prior to purchasing the Product. Plaintiff and the members of each Class paid for Defendant's Products and would not have purchased them (or would have paid substantially less for them) had they known that the Defendant's representations were untrue, and that Defendant omitted material information.

76.  **Adequacy:** Plaintiff will fairly and adequately protect the interests of the proposed Classes as her interests do not conflict with the interests of the members of the proposed Classes she seeks to represent, and she has retained counsel competent and experienced in class action litigation. Thus, the interests of the members of the Classes will be fairly and adequately protected by Plaintiff and her counsel.

77.  **Predominance:** Pursuant to Rule 23(b)(3), the common issues of law and fact identified in this Complaint predominate over any other questions affecting only individual members of the Classes. Class issues fully predominate over any individual issue because no inquiry into individual conduct is necessary; all that is required is a narrow focus on Defendant's misconduct detailed at length in this Complaint.

SECOND AMENDED CLASS ACTION COMPLAINT

78.    **Superiority:** A class action is superior to all other available methods for the fair and efficient adjudication of this litigation because individual litigation of each claim is impractical. It would be unduly burdensome to have individual litigation of hundreds of thousands of individual claims in separate lawsuits, every one of which would present the issues presented in the Complaint/lawsuit. Further, because of the damages suffered by any individual Class member may be relatively modest in relation to the cost of litigation, the expense and burden of individual litigation make it difficult, if not impossible. Furthermore, many of the Class members may be unaware that claims exist against the Defendant.

79.    **Declaratory and Injunctive Relief:** Pursuant to Rule 23(b)(2), declaratory and injunctive relief is appropriate in this matter. Defendant has acted or refused to act on grounds generally applicable to Plaintiff and the other Class members, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the Class members as a whole. Unless declaratory relief is granted and a class-wide injunction is issued, Defendant will continue to advertise, market, promote, and sell the Products in an unlawful and misleading manner, as described throughout this Complaint, and members of the Classes will continue to be misled, harmed, and denied their rights under the law.

**FIRST CLAIM FOR RELIEF**
**Violation of California's Consumers Legal Remedies Act**
**California Civil Code § 1750, *et seq.***
**(*For the California Consumer Subclass*)**

80.    Plaintiff repeats the allegations contained in paragraphs 1-79 above as if fully set forth herein.

81.    Plaintiff brings this claim individually and on behalf of the members of the proposed California Consumer Subclass against Defendant pursuant to

-23-

California's Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750, *et seq.*

82.    The Products are "good[s]" within the meaning of Cal. Civ. Code § 1761(a), and the purchases of the Products by Plaintiff and members of the California Consumer Subclass constitute "transactions" within the meaning of Cal. Civ. Code § 1761(e).

83.    Cal. Civ. Code § 1770(a)(5) prohibits "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have. . . ." By using the Heart Health Representations on the front label of the Products, Defendant has represented and continues to represent that the Products have sponsorship, approval, characteristics, uses, and benefits (i.e., that the Products support heart health) that they do not have. Therefore, Defendant has violated section 1770(a)(5) of the CLRA.

84.    Cal. Civ. Code § 1770(a)(7) prohibits "[r]epresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another." By using the Heart Health Representations on the front label of the Products, Defendant has represented and continues to represent that the Products are of a particular standard, quality, or grade (i.e., that the Products support heart health) that they do not meet. Therefore, Defendant has violated section 1770(a)(7) of the CLRA.

85.    Cal. Civ. Code § 1770(a)(9) prohibits "[a]dvertising goods or services with intent not to sell them as advertised." By using the Heart Health Representations on the front label of the Products, and not delivering Products that support heart health, Defendant has advertised the Products with characteristics it intended not to

provide to consumers. As such, Defendant has violated section 1770(a)(9) of the CLRA.

86.    At all relevant times, Defendant has known or reasonably should have known that the Heart Health Representations on the front label of the Products are false and deceptive, and that Plaintiff and other members of the California Consumer Subclass would reasonably and justifiably rely on these representations when purchasing the Products. Nonetheless, Defendant deceptively advertises the Products as such in order to deceive consumers into believing the Products support heart health.

87.    Moreover, Defendant omitted material facts that it was required to disclose by failing to include the fact that fish oil supplements may increase the risk of atrial fibrillation and harm heart health. Defendant had a duty to disclose such facts because they are contrary to the affirmative Heart Health Representations. This omission is false and misleading, and Defendant knew, or should have known, through the exercise of reasonable care, the Heart Health Representations and Omissions were false and misleading.

88.    Plaintiff and members of the California Consumer Subclass have justifiably relied on Defendant's misleading representations and omissions when purchasing the Products. Moreover, based on the materiality of Defendant's misleading and deceptive conduct, reliance may be presumed or inferred for Plaintiff and members of California Consumer Subclass.

89.    Plaintiff and members of the California Consumer Subclass have suffered and continue to suffer injuries caused by Defendant because they would have paid significantly less for the Products, or would not have purchased them at all, had they known that the Products do not support heart health.

SECOND AMENDED CLASS ACTION COMPLAINT

90.     Under Cal. Civ. Code § 1780(a), Plaintiff and Class members currently seek injunctive relief for Defendant's violations of the CLRA.

91.     Plaintiff mailed notice to Defendant of their CLRA violations pursuant to Cal. Civ. Code § 1782 on March 5, 2024. Defendant has not agreed to rectify the problems identified herein within 30 days of receipt. Thus Plaintiff seeks damages pursuant to Cal. Civ. Code § 1780 individually, and on behalf of the members of the Classes.

92.     Pursuant to Cal. Civ. Code § 1780(d), a declaration of venue is attached to this Complaint.

## SECOND CLAIM FOR RELIEF
### Violation of California's False Advertising Law
### California Business & Professions Code § 17500, *et seq*
### (*For the California Class*)

93.     Plaintiff repeats the allegations contained in paragraphs 1-79 above as if fully set forth herein.

94.     Plaintiff brings this claim individually and on behalf of the members of the proposed California Class against Defendant pursuant to California's False Adverting Law ("FAL"), Cal. Bus. & Prof. Code § 17500, *et seq.*

95.     The FAL makes it "unlawful for any person to make or disseminate or cause to be made or disseminated before the public . . . in any advertising device . . . or in any other manner or means whatever, including over the Internet, any statement, concerning . . . personal property or services professional or otherwise, or performance or disposition thereof, which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." Cal. Bus. & Prof. Code § 17500.

96.    Defendant has represented and continues to represent to the public, including Plaintiff and members of the proposed California Class, through its deceptive labeling and advertising, that the Products support heart health. Because Defendant has disseminated misleading information regarding the Products, and Defendant knows, knew, or should have known through the exercise of reasonable care that the representations were and continue to be misleading, Defendant has violated the FAL.

97.    Moreover, Defendant omitted material facts that it was required to disclose by failing to include the fact that fish oil supplements may increase the risk of atrial fibrillation and harm heart health. Defendant had a duty to disclose such facts because they are contrary to the affirmative Heart Health Representations. Defendant knows, knew, or should have known through the exercise of reasonable care that the omissions were and continue to be misleading.

98.    As a result of Defendant's false advertising, Defendant has and continues to unlawfully obtain money from Plaintiff and members of the California Class. Plaintiff therefore requests that the Court enjoin Defendant from violating the FAL or violating it in the same fashion in the future as discussed herein. Otherwise, Plaintiff and members of the proposed California Class may be irreparably harmed and/or denied an effective and complete remedy.

### THIRD CLAIM FOR RELIEF
#### Violation of California's Unfair Competition Law ("UCL"), California Business & Professions Code § 17200, *et seq.* (*For the California Class*)

99.    Plaintiff repeats the allegations contained in paragraphs 1-79 above as if fully set forth herein.

100.   Plaintiff brings this claim individually and on behalf of the members of the proposed California Class against Defendant.

101.   The UCL, Cal. Bus. & Prof Code § 17200, provides, in pertinent part, that "unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising[.]"

102.   Under the UCL, a business act or practice is "unlawful" if it violates any established state or federal law. Defendant's false and misleading advertising of the Products was and continues to be "unlawful" because it violates the CLRA and the FAL. As a result of Defendant's unlawful business acts and practices, Defendant has unlawfully obtained money from Plaintiff and members of the proposed California Class.

103.   Under the UCL, a business act or practice is "unfair" if its conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous, as the benefits for committing such acts or practices are outweighed by the gravity of the harm to the alleged victims. Defendant's conduct was and continues to be of no benefit to purchasers of the Products, as it is misleading, unfair, unlawful, and is injurious to consumers who rely on the Products' labeling. Deceiving consumers into believing they will receive a Product(s) that supports heart health. Therefore, Defendant's conduct was and continues to be "unfair." As a result of Defendant's unfair business acts and practices, Defendant has and continues to unfairly obtain money from Plaintiff and members of the proposed California Class.

104.   Under the UCL, a business act or practice is "fraudulent" if it actually deceives or is likely to deceive members of the consuming public. Defendant's conduct here was and continues to be fraudulent because it has the effect of deceiving

consumers into believing the Products support heart health. Moreover, Defendant omitted material facts that it was required to disclose by failing to include the fact that fish oil supplements may increase the risk of atrial fibrillation and harm heart health. Defendant had a duty to disclose such facts because they are contrary to the affirmative Heart Health Representations. Because Defendant misled Plaintiff and members of the California Class, Defendant's conduct was "fraudulent." As a result of Defendant's fraudulent business acts and practices, Defendant has and continues to fraudulently obtain money from Plaintiff and members of the California Class.

105.   Plaintiff requests that the Court enjoin Defendant from violating the UCL or violating it in the same fashion in the future as discussed herein. Otherwise, Plaintiff and members of the proposed California Class may be irreparably harmed and/or denied an effective and complete remedy.

**FOURTH CLAIM FOR RELIEF**
**Breach of Express Warranty**
**Cal. Com. Code § 2313**
(***For the California Class***)

106.   Plaintiff repeats the allegations contained in paragraphs 1-79 above as if fully set forth herein.

107.   Plaintiff brings this claim individually and on behalf of the members of the California Class against Defendant.

108.   California's express warranty statutes provide that "(a) [a]ny affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise," and "(b) [a]ny description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description." Cal. Com. Code § 2313.

-29-

109.   Defendant has expressly warranted on the Products' front label that they support heart health. However, as alleged herein, these express representations are false and misleading, as the Products do not support heart health and may even harm heart health.

110.   Defendant's representations about heart health on the Products' front labels are: (a) affirmations of fact or promises made by Defendant to consumers that the Products support heart health; (b) became part of the basis of the bargain to purchase the Products when Plaintiff and other consumers relied on the representations; and (c) created an express warranty that the Products would conform to the affirmations of fact or promises. In the alternative, the representations about the Products are descriptions of goods which were made as part of the basis of the bargain to purchase the Products, and which created an express warranty that the Products would conform to the product descriptions.

111.   Plaintiff and members of the California Class reasonably and justifiably relied on the foregoing express warranties, believing the Products support heart health.

112.   Defendant has breached the express warranties made to Plaintiff and members of the California Class by failing to provide the Products as represented on the front label.

113.   Plaintiff and members of the California Class paid a premium price for the Products but did not obtain the full value of the Products as represented. If Plaintiff and members of the California Class had known of the true nature of the Products, they would not have been willing to pay the premium price associated with them. As

-30-

a result, Plaintiff and members of the California Class suffered injury and deserve to recover all damages afforded under the law.

114. On March 5, 2024, the undersigned counsel notified Defendant of its breach of warranty by way of a notice letter outlining the foregoing allegation.

### FIFTH CLAIM FOR RELIEF
### Breach of Implied Warranty
### (*For the California Class*)

115. Plaintiff repeats the allegations contained in paragraphs 1-79 above as if fully set forth herein.

116. Plaintiff brings this claim individually and on behalf of the members of the California Class against Defendant.

117. California's implied warranty of merchantability statute provides that "a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." Cal. Com. Code § 2314(1).

118. California's implied warranty of merchantability statute also provides that "[g]oods to be merchantable must be at least such as . . . (f) conform to the promises or affirmations of fact made on the container or label if any." Cal. Com. Code § 2314(2)(f).

119. Defendant is a merchant with respect to the sale of Products. Therefore, a warranty of merchantability is implied in every contract for sale of the Products to California consumers.

120. By advertising the Products with representations about heart health on the Products' front label, Defendant made an implied promise that the Products support heart health. However, the Products have not "conformed to the promises. . . made on the container or label" because the Products do not support heart health, and

-31-

may harm heart health. Plaintiff, as well as other California consumers, did not receive the goods as impliedly warranted by Defendant to be merchantable. Therefore, the Products are not merchantable under California law and Defendant has breached its implied warranty of merchantability in regard to the Products.

121.   If Plaintiff and members of the California Class had known that the Products' Heart Health Representations were false and misleading, they would not have been willing to pay the premium price associated with them. Therefore, as a direct and/or indirect result of Defendant's breach, Plaintiff and members of the California Class have suffered injury and deserve to recover all damages afforded under the law.

122.   On March 5, 2024, the undersigned counsel notified Defendant of its breach of warranty by way of a notice letter outlining the foregoing allegation.

### SIXTH CLAIM FOR RELIEF
#### Negligent Misrepresentation
#### (*For the California Class*)

123.   Plaintiff repeats the allegations contained in paragraphs 1-79 above as if fully set forth herein.

124.   Plaintiff brings this claim individually and on behalf of the members of the California Class against Defendant.

125.   Defendant had a duty to disclose to Plaintiff and Class Members correct information as to the quality and characteristics of the Products because Defendant was in a superior position than Plaintiff and Class Members such that reliance by Plaintiff and Class Members was justified. Defendant possessed the skills and expertise to know the type of information that would influence a consumer's purchasing decision.

126. At all relevant times, Defendant negligently or carelessly misrepresented, omitted, and concealed from consumers material facts regarding the quality and characteristics of the Products, including representing that the Products supports heart health and would not harm heart health when that was not the case.

127. Defendant made such false and misleading statements and omissions with the intent to induce Plaintiff and Class Members to purchase the Products at a premium price.

128. Defendant was careless in ascertaining the truth of its representations in that it knew or should have known that Plaintiff and Class Members would pay a premium based on the Heart Health Representations and Omissions.

129. Plaintiff and the Class Members were unaware of the falsity of Defendant's misrepresentations and omissions and, as a result, justifiably relied on them when making the decision to purchase the Products.

130. Plaintiff and the Class Members would not have purchased the Products or paid as much for the Product if the true facts had been known.

**SIXTH CLAIM FOR RELIEF**
**Intentional Misrepresentation/Fraud**
**(*For the California Class*)**

131. Plaintiff repeats the allegations contained in paragraphs 1-79 above as if fully set forth herein.

132. Plaintiff brings this claim individually and on behalf of the members of the California Class against Defendant.

133. Defendant had a duty to disclose to Plaintiff and Class Members correct information as to the quality and characteristics of the Products because Defendant was in a superior position than Plaintiff and Class Members such that reliance by

Plaintiff and Class Members was justified. Defendant possessed the skills and expertise to know the type of information that would influence a consumer's purchasing decision.

134.    At all relevant times, Defendant intentionally misrepresented, omitted, and concealed from consumers material facts regarding the quality and characteristics of the Products, including representing that the Products support heart health and will not harm heart health. These representations and omissions were material and were uniformly made.

135.    As described above, Defendant's representations and omissions were false and misleading, as the Products do not support heart health, and can harm heart health. Defendant made these misrepresentations with actual knowledge of their falsity and/or made them with fraudulent intent.

136.    Defendant made such false and misleading statements and omissions with the intent to induce Plaintiff and Class Members to purchase the Products at a premium price, deprive Plaintiff and Class Members of property or otherwise causing injury, and thus, Defendant has committed fraud.

137.    Defendant's deceptive or fraudulent intent is evidenced by motive and opportunity. Defendant knew that consumers value products that support heart health. For that reason, Defendant labeled and advertised its Products with the Heart Health Representations and Omissions to gain a competitive edge and to induce Plaintiff and Class Members to purchase its Products at a premium price. As a leader in the supplement industry, Defendant is in a unique position to know that omega-3s do not support, and can harm, heart health, and thus Defendant knew that the representations and omissions were false and misleading when it made them.

138.    Plaintiff and the Class Members were unaware of the falsity in Defendant's misrepresentations and omissions and, as a result, justifiably relied on them when making the decision to purchase the Product.

139.    As a proximate result of Defendant's intentional misrepresentations, Plaintiff and the Class were induced to purchase the Products at a premium.

140.    Plaintiff and the Class Members would not have purchased the Products or paid as much for the Products if the true facts had been known.

141.    As a result of their reliance, Plaintiff and Class Members were injured in an amount to be proven at trial, including, but not limited to, their lost benefit of the bargain and overpayment at the time of purchase.

142.    Defendant's conduct was knowing, intentional, with malice, demonstrated a complete lack of care, and was in reckless disregard for the rights of Plaintiff and Class Members. Plaintiff and Class Members are therefore entitled to an award of punitive damages.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, individually and on behalf of the proposed Classes, respectfully prays for following relief:

A.    Certification of this case as a class action on behalf of the proposed Classes defined above, appointment of Plaintiff as Class representative, and appointment of her counsel as Class Counsel;

B.    A declaration that Defendant's actions, as described herein, violate the claims described herein;

C.    An award of injunctive relief as is necessary to protect the interests of Plaintiff and the proposed Classes, including, *inter alia*, an order prohibiting

Defendant from engaging in the unlawful acts described above;

E.      An award of all economic, monetary, actual, consequential, and compensatory damages caused by Defendant's conduct;

F.      An award of nominal, punitive, and statutory damages;

G.      An award to Plaintiff and her counsel of reasonable expenses and attorneys' fees;

H.      An award to Plaintiff and the proposed Classes of pre and post-judgment interest, to the extent allowable; and

I.      For such further relief that the Court may deem just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff, individually, and on behalf of the proposed Classes, hereby demands a jury trial with respect to all issues triable of right by jury.

DATED: November 7, 2024                          **TREEHOUSE LAW, LLP**

By: _/s/ *Ruhandy Glezakos*_

Ruhandy Glezakos (SBN 307473)
Benjamin Heikali (SBN 307466)
Joshua Nassir (SBN 318344)
Katherine Phillips (SBN 353048)
3130 Wilshire Blvd., Suite 555
Santa Monica, CA 90403
Telephone: (310) 751-5948
rglezakos@treehouselaw.com
bheikali@treehouselaw.com
jnassir@treehouselaw.com
kphillips@treehouselaw.com

*Attorneys for Plaintiff and the Putative Classes*

-36-

## Venue Declaration Pursuant to Cal. Civ. Code 1780(d)

I, Pearl Magpayo, declare as follows:

1.      I am the named Plaintiff in the above-captioned action and a citizen of the State of California. I have personal knowledge of the facts set forth in this declaration, and am competent to testify to the same. The matters set forth herein are true and correct to the best of my knowledge and belief.

2.      I believe that the Northern District of California is the proper place for trial of this case because I reside in this District and I purchased one of the Products at issue in this case in this District. Thus, a substantial part of the events or omissions giving rise to the claims at issue in this case occurred in this District.

I declare under penalty of perjury that the foregoing is true and correct, executed on __03/04/2024__ in Hayward, California

_____
Pearl Magpayo