UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

PEARL MAGPAYO,

          Plaintiff,

   v.

WALMART INC.,

          Defendant.

Case No. 24-cv-01350-WHO

**ORDER GRANTING MOTION TO DISMISS SECOND AMENDED COMPLAINT**

Re: Dkt. No. 44

Plaintiff Pearl Magpayo challenges the advertising and label disclosures on defendant's Spring Valley Fish Oil Omega-3 dietary supplements ("Products"). Second Amended Complaint ("SAC," Dkt. No. 43) ¶¶ 11-13. Under the law in this Circuit, in order to plead a structure/function claim as she attempts to do here, she must allege that taking omega 3 fish oil supplements provides no benefit for "heart health" and support that allegation by citing "matched evidence" from identified scientific studies. *Kroessler v. CVS Health Corp.*, 977 F.3d 803, 812 (9th Cir. 2020). In the SAC, she still fails to meet that burden. Her complaint is DISMISSED, this time with prejudice.

## BACKGROUND

In my October 2024 Order, I explained that plaintiff's claims regarding the challenged statements on the Products' labels – that "Fish Oil is a source of Omega-3 fatty acids that support heart health," and the use of "Heart Health" and a heart symbol – were "structure function" claims. October 2024 Order, Dkt. No. 42, at 9-10.[1] Because the FAC pleaded only preempted implied disease claims, I gave plaintiff leave to amend to either identify additional support to plausibly

_____

[1] The factual background, including plaintiff's allegations regarding consumer use of and reasonable expectations regarding omega 3 fish oil supplements, and the legal standard governing these claims, are discussed in depth in the October 2024 Order and will not be repeated here.

1   support a not-preempted implied disease claim or to plausibly plead facts supporting an actionable

2   structure function claim.  *Id.* at 10-12.

3          In the SAC, plaintiff drops the implied disease theory and more clearly attempts to allege a

4   structure/function claim.  In support of that claim, plaintiff relies on: (1) scientific studies, papers,

5   and articles that conclude taking omega 3 fish oil supplements does not help prevent or reduce the

6   incidence of cardiovascular disease or adverse cardiovascular events (SAC ¶¶ 5, 32, 38-44, 46-49,

7   50, 53, 55); (2) a portion of a study that shows taking omega 3 fish oil supplements does not

8   support a "key" inflammatory marker, homocysteine (SAC ¶ 45 fn. 22); and (3) a study and

9   clinical trial that conclude that taking omega 3 fish oil supplements could cause harm, by

10  increasing the chance of atrial fibrillation.  SAC ¶¶ 55-60.

**DISCUSSION**

12         I evaluate plaintiff's amended claims under the applicable standards governing challenged

13  structure/function claims outlined in Ninth Circuit precedent, including *Greenberg v. Target*

14  *Corporation*, 985 F.3d 650 (2021), *Kroessler v. CVS Health Corp.*, 977 F.3d 803, 812 (9th Cir.

15  2020), and *Dachauer v. NBTY, Inc.*, 913 F.3d 844 (2019).  As the Ninth Circuit made clear in

16  *Kroessler*, in order to plead a structure/function claim plaintiff must allege that taking omega 3

17  fish oil supplements provides no benefit for "heart health" and she must support that allegation by

18  citing "matched evidence" from identified scientific studies.  977 F.3d at 812.  She still fails to

19  meet that burden.

20         Plaintiff alleges that "multiple randomized clinical trials have shown no cardiovascular

21  benefits to fish oil supplements." SAC n.4 & ¶¶ 40, 54.  But the article she cites – Joanna N.

22  Assadourian et al., Health Claims and Doses of Fish Oil Supplements in the US, 8(10) JAMA

23  Cardiology 984, 986 (Aug. 23, 2023) – was reviewing *labels*.  It was not an efficacy study or

24  randomized trial itself; plaintiff does not quote and cite to any of the studies or trials relied on in

25  the Assadourian study as showing "no benefit" to heart health.  *See* SAC ¶ 53 (discussing

26  Assadourian).

27         Instead, plaintiff cites and identifies scientific studies or clinical trials finding that there is

28  no or little evidence that taking omega 3 fish oil supplements reduces cardiovascular *disease* or

2

adverse cardiovascular *events*. *See* SAC ¶¶ 5, 32, 38-44, 46-49, 50, 53, 55. That is not the standard following *Kroessler*. To be clear, these studies are not irrelevant when pleading or evaluating a structure/function claim simply because they focus on cardiovascular disease or adverse events.[2] Plaintiff may rely on disease studies, *but within those studies* she must identify evidence or conclusions that are "matched" to her challenge. *Kroessler*, 977 F.3d at 813 ("*Kroessler* also alleges that the contents of the studies support the conclusion that glucosamine is 'ineffective' at 'supporting, maintaining, or benefiting the health of human joints.' Taken as true, those allegations directly refute CVS's claims."). Matching evidence here would be evidence or a conclusion in an identified scientific source that taking omega 3 fish oil supplements provides "no benefit" to heart health. She identifies no such evidence or conclusions in the SAC.

Plaintiff complains that defendant – by discussing the contents and conclusions of the studies plaintiff relies on in her SAC – is inappropriately asking me to weigh evidence at the motion to dismiss stage. But defendant is simply pointing out that the scientific evidence plaintiff has identified and relies on is not, in fact, matched to her theory of this case as required by *Kroessler:* nothing in those studies says what plaintiff needs them to say, which is that there is no benefit to heart health from taking omega 3 fish oil supplements.

The closest plaintiff comes to satisfying her pleading burden is one assertion, based on one study, that "Omega-3 does not seem to be able to change the inflammatory markers significantly, particularly homocysteine." SAC ¶ 45 fn. 22. The fact that one inflammation marker – presumably one aspect of heart health – is not impacted by taking omega 3 fish oil supplements does not support the broader assertion that taking omega 3 fish oil supplements provides no support to "heart health." Plaintiff contends that at this juncture she should be able to plead her claim by identifying *any* marker of heart health that is not supported by taking omega 3 fish oil supplements, as that is "one small aspect" of heart health. *See Greenberg v. Target Corp.*, 985

---

[2] *See Gallagher v. Bayer AG*, No. 14-CV-04601-WHO, 2015 WL 4932292, at *5 (N.D. Cal. Aug. 18, 2015 ("Although much of the evidence cited by the SACAC does not directly support plaintiffs' claim, it provides circumstantial support and is relevant to the falsity of the "support heart health" claim. There is undoubtedly a correlation between health and the absence of disease. Many of the barometers of 'heart health,' such as homocysteine levels, are also associated with the presence or absence of heart disease.").

United States District Court
Northern District of California

F.3d at 655 (a defendant will defeat a challenge to a structure/function claim at summary judgment where it can "show evidence of an effect on a small aspect of the related structure/function."). She argues that she should not be required to plead and cite evidence in support that taking omega 3 fish oil supplements has absolutely no benefit on any aspect of heart health because that will be defendant's burden on summary judgment. *See id*. But as the Ninth Circuit made clear in *Kroessler* and *Greenberg*, the evidence plaintiff must cite to support her structure/function claim has to be matched. Plaintiff is not challenging a statement on defendant's Products that taking omega 3 fish oil supplements supports homocysteine. Her claim, instead, is that taking omega 3 fish oil supplements provides no benefit to heart health and that is why defendant's "heart health" claims on the labels are false and misleading. That is the claim to which evidence must be matched.[3]

Defendant argues that plaintiff cannot plausibly support her "no benefit claim" because one of the studies she cites in support (Gholipur-Shahraki et al., Effect of Omega-3 Fatty Acids Supplementation on Homocysteine Level in Patients Undergoing Continuous Ambulatory Peritoneal Dialysis, J Res Pharm Pract. 2022) finds that "Omega-3 fatty acids have cardiovascular protective properties by improving lipid profile and reducing inflammation and oxidative stress," "omega-3 caused a meaningful reduction in triglyceride concentration" and "omega-3 supplementation significantly increased HDL-C [good cholesterol] compared with placebo." Supplemental Declaration of W. Cole [Dkt. No. 49-3], Ex. 1 at 1, 82, 85. Plaintiff does not dispute that these findings show the supplements support some aspects of "heart health."

That leaves plaintiff's theory that supports heart health is nonetheless false or misleading because taking omega 3 fish oil supplements can harm consumers, specifically that it can lead to atrial fibrillation. SAC ¶¶ 12, 14, 31, 49, 55-59. She relies first on Ge Chen et al., Regular Use of

---

[3] Plaintiff's unopposed motion for leave to file supplemental authority, Dkt. No. 53 is GRANTED. I have considered the recent opinion in *Hamzeh v. Pharmavite LLC*, Case No.: 4:24-CV-00472-HSG (ECF No. 55) (Feb. 26, 2025). The record here is different. Plaintiff does not allege in the SAC – and cites no identified scientific study or other evidence in support – that taking omega 3 fish oils provides "no support" to "heart health". And for its part, defendant also identified recent authority; *Bowler v. Nestlé Health Science U.S., LLC*, No. 2:24-cv-06521-MCS-JPR (C.D. Cal. Jan. 28, 2025). The *Bowler* court reached the same conclusion that I have, based on what appears to be a similar record and similar arguments by counsel.

1    Fish Oil Supplements and Course of Cardiovascular Diseases: Prospective Cohort Study, 3 BJM

2    Med. 1, 6, 8 (May 21, 2024) ("Chen").  She alleges that Chen found "regular use of fish oil" by

3    healthy people "was associated with an increased risk of atrial fibrillation" and possible "risk

4    factor" for stroke.  SAC ¶ 56.  She also relies on the STRENGTH Randomized Clinical Trial,"

5    Stephen J. Nicholls et al., Effect of High-Dose Omega-3 Fatty Acids vs Corn Oil on Major

6    Adverse Cardiovascular Events in Patients at High Cardiovascular Risk: The STRENGTH

7    Randomized Clinical Trial, 324(22) JAMA 2268, 2268 (Nov. 15, 2020) ("STRENGTH Trial")).

8    She alleges that the STRENGTH Trial found an increased risk of atrial fibrillation related to

9    taking omega 3 fish oil supplements.  SAC ¶ 57 fn. 33.  Finally, she relies on the editor's note

10   from a study, where the study's author opines that patients "who choose to take omega-3 fatty

11   acids, especially in high doses, should be informed of the risk of [atrial fibrillation]."  SAC ¶ 58

12   ("VIRAL" study).

13          Defendant asserts that the harm claim has not been plausibly alleged.  It challenges the

14   sufficiency of the allegations because none of the studies cited concerned taking omega-3

15   supplements at the dosage recommended by defendant's Products.  Defendant points out that the

16   Chen study – the primary reference on which plaintiff relies – stated that "information on dose and

17   formulation of the fish oil supplements was not available in this study so we could not evaluate

18   potential dose dependent effects or differentiate between the effects of different fish oil

19   formulation."  Dkt. No. 44-1, Ex. 3 at 64.  It concluded that "regular" use of fish oil supplements

20   at an unidentified dose might "be a risk factor for atrial fibrillation and stroke among the general

21   population" but "no causal relations can be drawn from our findings."  *Id*. at 57, 64.  Defendant

22   notes that in the STRENGTH trial, the participants were taking 4 grams of omega-3 fish oil, far

23   above the 1 gram recommended in defendant's product.

24          Defendant contrasts that with the VITAL study, which states that where patients received a

25   standard daily dose of 840 m/d of EPA/DHA – just below the 1g/d recommended amount for the

26   Products – there "was no apparent increase in risk" and a dose of 1.8 g/d (above the recommended

27   use) any increased risk "did not achieve statistical significance."  Dkt. No. 44-1, Ex. 2 at 55.  The

28   Editor's Note in the VITAL study expressly recognized that the "dose" played a significant role in

1   the findings and there was only significant risk of increased chance of atrial fibrillation at the

2   upper/higher doses that far exceed the Product's recommended use.  *Id*. at 55.  Given the failure to

3   address the dose issue, defendant argues, plaintiff's assertions of harm from use of the Products as

4   recommended are impermissibly speculative and cannot sustain the claim here.

5       Defendant has support in *Dachauer v. NBTY, Inc*., 913 F.3d 844 (9th Cir. 2019).  There,

6   the court reviewed claims that could qualify as false and misleading and explained that "FDCA

7   regulations state that a food label 'shall be deemed to be misleading if it fails to reveal facts' that

8   are '[m]aterial with respect to consequences which may result from use of the article' under

9   normal conditions of use or the conditions of use that the label prescribes. 21 C.F.R. § 1.21(a)(2).

10  In other words, if a supplement's label recommends taking one capsule per day and that dose

11  actually causes an increased risk of death—a material fact 'with respect to consequences which

12  may result from use of the article'—the FDCA would deem it misleading not to reveal that fact on

13  the label." *Id*. at 849.

14      Here, plaintiff has failed to allege and cite evidence in support that taking omega-3 fish oil

15  supplements *at the level the Products recommend* increases the risk of atrial fibrillation.  The

16  scientific studies and evidence on which she relies do not support her claim, given the unspecified

17  or expressly identified "high doses" analyzed in the studies plaintiff cites.

18      Plaintiff defends her reliance on the "high dose" studies and commentary by arguing that

19  "normal conditions of use" by consumers could exceed defendant's recommended daily use.  She

20  notes that in *Krommenhock v. Post Foods, LLC*, 255 F. Supp. 3d 938 (N.D. Cal. 2017), I

21  addressed a scenario where consumers regularly exceeded the recommended servings for cereal

22  set by the manufacturer.  *Id*. at 963.  But unlike the SAC here, the plaintiff in *Krommenhock*

23  alleged that typical consumers regularly consumed the product in excess of the manufacturer's

24  serving suggestions.  *Id*.  There are no similar allegations that reasonable consumers normally take

25  omega 3 fish oil supplements in excess of defendant's recommended daily dose.

26      Even if those allegations could be made, plaintiff cannot rely on alleged "normal

27  conditions" of use to get around the label's recommended use.  The regulation discussed by

28  *Dachauer*, 21 C.F.R. § 1.21(a)(2), must be interpreted in light of the governing statute, 21 U.S.C.

United States District Court
Northern District of California

§ 342. That statute provides "normal conditions of use" should only be considered if no conditions of use are suggested or recommended on the labeling, which is not the case here.

> (f) Dietary supplement or ingredient: safety
> (1) If it is a dietary supplement or contains a dietary ingredient that--
> (A) presents a significant or unreasonable risk of illness or injury under--
> (i) conditions of use recommended or suggested in labeling, or
> (ii) if no conditions of use are suggested or recommended in the labeling, under ordinary conditions of use.

21 U.S.C. § 342 (f). Here, because the Product provides a recommended level of use, allegations regarding "normal" conditions of use would be inapposite.

Despite having been given leave to amend to attempt to satisfy her pleading burden, plaintiff has failed to adequately allege a false and misleading structure/function claim as required to state a not-preempted consumer protection claim under California law. *See* generally October 2024 Order. Plaintiff does not dispute that this failure means her other claims – her express and implied warranty, negligent and intentional misrepresentation claims as well as her claim for injunctive relief – all fail. *See* Mot. at 14-15; Oppo. at 19-20; Reply at 12.

## CONCLUSION

For the reasons discussed above, defendant's motion to dismiss is GRANTED WITH PREJUDICE.

**IT IS SO ORDERED.**

Dated: March 10, 2025

William H. Orrick
United States District Judge